IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
ALBANY DIVISION

DAVID J. PETERSON, JR., :
:
    Plaintiff, :
:
vs. : 1:06-CV-51 (WLS)
:
KELLY CRAWFORD, ET. AL., :
:
    Defendants :

## ORDER

Before the Court are Defendants', Kelly Crawford, Sam Oliver, Willie Griffin and Sally Whatley, motion for summary judgment (Doc. No. 37) and Defendant Taiwan Heath's motion for summary judgment. For the following reasons, Defendants' motions for summary judgment (Doc. Nos. 19, 37) are **GRANTED-IN-PART and DENIED-IN-PART.**

## BACKGROUND

The instant complaint for relief was filed on April 7, 2006. (Doc. No. 1). In this complaint, Plaintiff alleges that he was arrested and prosecuted without probable cause in violation of state law and federal law as guaranteed by the United States Constitution. The action was brought pursuant to 42 U.S.C. § 1983 and state law. Defendants seek summary judgment on these claims.

November 20, 2003, a female Monroe Comprehensive High School student, Kwajalein Alexander ("Alexander") reported to Officer Twyon Heath, a school resource officer, that a black male in a maroon or red car tried to kidnap her.[1] Heath was a P.O.S.T. certified officer employed by the City of Albany and apparently assigned to the school as a resource officer.

Alexander reported that as she walking down the street, apparently near the school, a

---

[1]. The facts, as best as they can be ascertained, are primarily garnished from the briefs of the parties and the statements of fact submitted by Defendant Heath. The statement of facts filed by Crawford and Peterson are otherwise unhelpful.

1

black male driving a red or maroon car with tinted windows which looked like a Toyota drove past her. The car made a u-turn and pulled up beside her. The driver, a black male wearing a skull cap got out of the car and tried to grab Alexander. The black male was described as having hair up to a half an inch long. The man was further described as approximately six feet tall, of heavy build, with a mustache and in his thirties. His complexion was not described other than as kind of "dark brown."

Following the incident, Defendant Crawford, a Dougherty County School System Police Officer, heard about the incident and offered to drive Alexander to school for a period of time. Defendant Crawford and Alexander lived in the same neighborhood. According to Crawford and an order signed by the Dougherty County Sheriff's department, Crawford had been deputized and sworn as a sheriff's deputy. What authority he was endowed with as a result is in dispute.

On the morning of December 1, 2003, Defendant Kelly Crawford was giving Alexander a ride to school. At an intersection near Alexander's home, Crawford spotted a red or maroon vehicle with tinted windows. Crawford asked Alexander whether the car they saw was the one driven by the person that assaulted her. Alexander replied, "that looks like it." Crawford followed the car for a few blocks and even pulled along side the vehicle for Alexander to try to look at the driver's face. After a few minutes, Crawford stopped the vehicle driven by Plaintiff.

After Plaintiff was stopped, Crawford made Plaintiff get out of the car in view of Alexander. Crawford took Plaintiff's keys and license. At some point during this process, Crawford notified Defendant Heath who arrived on the scene. Plaintiff was at some handcuffed and placed in Heath's patrol car.

The vehicle being driven by Plaintiff was a maroon 1986 Subaru GL. Plaintiff's hair was long and in braids and he weighed about 200 pounds. Plaintiff is five feet eight inches tall. Further, Plaintiff has deformed teeth, slurred speech and a goatee.

Plaintiff was transported to the Albany Police Department. Even though Alexander had seen Plaintiff repeatedly during the initial stop and arrest, Alexander was also transported to the police department where she was shown a photographic line-up which included a photograph of Plaintiff. Alexander allegedly picked Plaintiff's photograph out of the line-up as the individual that attacked her. The photographs from the line-up are no longer available and Defendant Heath has no memory of the individual photographs used in the line-up.

Even though Crawford was deputized by the Sheriff, Sheriff Saba testified that under the circumstances Crawford's authority as a deputy did not allow him to make arrests. Further, the Sheriff testified that Crawford was not authorized to make traffic stops. There is nothing in the school manual that authorized Crawford to make arrests off school property. According to Sheriff Saba, training of school officers was left to Defendant Willie Griffin. Defendant Griffin did not conduct any training of the officers under his command and was unaware or had not seen any written school policy concerning arrests.

Other than the events described herein, neither Crawford, nor Heath, conducted any investigation. According to Heath, the policy governing police officers assigned to the school system was unavailable. Further, Heath was unaware of whether the victim had seen the Plaintiff prior to the line-up.

Plaintiff was indicted for attempted kidnaping by a Dougherty County Grand Jury on February 25, 2004. On July 12, 2005, Plaintiff was found not guilty after a jury trial.

## DISCUSSION

### I. SUMMARY JUDGMENT STANDARD

Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." The Court is required to "resolve all reasonable doubts about the facts in favor of the non-movant, and

draw all justifiable inferences in his or her favor." Fitzpatrick v. City of Atlanta, 2 F.3d 1112, 1115 (11th Cir. 1993) (quotations and citations omitted).

The moving party carries the initial burden of showing that there is an absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S. Ct. 2548, 2553 (1986). The substantive law governing the case determines which facts are material, and "summary judgment will not lie if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S. Ct. 2505, 2510 (1986). For issues on which the non-movant bears the burden of proof at trial, the moving party "simply may show—that is, point out to the district court—that there is an absence of evidence to support the non-moving party's case. Alternatively, the moving party may support its motion for summary judgment with affirmative evidence demonstrating that the non-moving party will be unable to prove its case." Fitzpatrick, 2 F.3d at 1116 (quotations and citations omitted).

If the moving party fails to overcome this initial burden, the Court must deny the motion for summary judgment without considering any evidence, if any, presented by the non-moving party. Fitzpatrick, 2 F.3d at 1116. If, on the other hand, the moving party overcomes this initial burden, then the non-moving party must show the existence of a genuine issue of material fact that remains to be resolved at trial. Id. Moreover, the adverse party may not respond to the motion for summary judgment by summarily denying the allegations set forth by the moving party. Rather, the adverse party "must set forth specific facts showing that there is a genuine issue for trial. If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party." Fed. R. Civ. P. 56(e).

## II. ANALYSIS

Essentially, all Defendants' motions are based on the same arguments. (Doc. Nos. 19, 37). All Defendants argue that they are entitled to qualified immunity in their individual

capacities[2] on Plaintiff's Fourth Amendment claims. All Defendants argue they are entitled to official immunity in their official capacities on Plaintiff's Fourth Amendment clams. Plaintiff only asserted state law claims against Crawford and Heath. Crawford and Heath argue they are entitled to summary judgment on the state law claims under the doctrines of official immunity and sovereign immunity.

Qualified Immunity

Defendants Heath, Crawford, Oliver and Griffin argue that they are entitled to summary judgment on Plaintiff's Fourth Amendment claims asserted against them in their individual capacities.[3] In other words, Defendants argue that Plaintiff's Fourth Amendment claims are barred by the doctrine of qualified immunity.

The Supreme Court in Saucier v. Katz, 533 U.S. 194 (2001), clarified the mode of analysis the court must use when addressing a qualified immunity issue. In Saucier, the Court held that the merits of the Fourth Amendment excessive force claim and the concern for the "objective reasonableness" of an officer for qualified immunity purposes were two distinct questions.

First, the Court stated that a court required to rule upon the qualified immunity issue must first consider whether the facts as alleged, taken in a light most favorable to the party asserting the injury show the officer's conduct violated a constitutional right. Id. at 201, *citing*, Siegert v. Gilley, 500 U.S. 226, 232 (1991). If no constitutional right would have been

---

[2]. Defendants Crawford, Oliver, Griffin and Heath were sued in their individual and official capacities under § 1983. Defendant Whatley was only sued in her individual capacity.

[3]. A reading of the complaint and briefs shows that the parties agree that Plaintiff has asserted one or more federal claims pursuant to 42 U.S.C. § 1983. As the parties do not articulate the claims clearly, the Court at this point will not attempt to limit or expand the language of the complaint or other pleadings to delineate the possible claims. All parties agree that the federal claims arise under the Fourth Amendment. The main focus of the Defendants, in moving for summary judgment, while acknowledging there is more than one claim, is on the "unlawful arrest claim." To the extent a particular claim is addressed in the motions, the Court will address said claims.

5

violated were the allegations established as true, there is no necessity for further inquiries concerning qualified immunity. Id. at 201. On the other hand, if a violation could be made out on a favorable view of the parties' submissions, the next sequential step is to ask whether the right was "clearly established" because qualified immunity inquiries have a further dimension. This inquiry, the Court explained must be taken in light of the specific context of the case, not as a broad general proposition. Id.

The right the officials allegedly violated must be "clearly established" in a more particularized sense. The Supreme Court reasoned in Saucier, that it is sometimes difficult for an officer to determine how the relevant legal doctrines, a traffic stop, search and arrest case, will apply to the factual situation the officer confronts. Id. at 204. The relevant dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted. Id., *See*, Wilson v. Layne, 526 U.S. 603, 615 (1999). The defendant officer is entitled to summary judgment as a matter of law if the law would not have put the officer on notice that his conduct would be clearly unlawful. Id. at 203. According to the Supreme Court, the law does not require that for a specific form of conduct to be illegal that the conduct has previously been held unlawful. Hope v. Pelzter, 536 U.S. 730 (2002).

In the Eleventh Circuit, for a right to be "clearly established" for purposes of qualified immunity, "the law must have earlier been developed in such a concrete and factually defined context to make it obvious to all reasonable government actors, in the defendant's place, that what he is doing violates federal law." Jackson v. Sauls, 206 F.3d 1156, 1164 (11th Cir. 2000), *quoting*, Lassiter v. Alabama A & M Univ. Bd. of Trustees, 28 F.3d 1146, 1149 (11th Cir. 1994); Vinyard v County of Murray, Georgia, 990 F.2d 1207 (11th Cir. 1993).

The first inquiry is whether the facts as alleged, taken in a light most favorable to the party asserting the injury show the officer's conduct violated a constitutional right. Plaintiff had a right to be free from the unlawful use of excessive force and cruel and unusual

punishment. Hudson v. McMilliam, 503 U.S. 1 (1992). Plaintiff has clearly implicated a constitutional right to be free from unlawful arrest and prosecution under the Fourth Amendment. Michigan v. Defillippo, 443 U.S. 31 (1979).

The question of whether the law was clearly established is the next step in analysis. Essentially, both parties agree that the question turns on the concept of whether Defendants, particularly Crawford, had arguable probable cause to make the arrest. In discussing this question, Plaintiffs raise an underlying issue that is not often addressed in the most common Fourth Amendment cases, that is whether Defendant Crawford is even entitled to qualified immunity under any set of facts now before the Court.

Plaintiff argues that Crawford did not have the authority to make the initial stop or arrest at all. The question raised is whether the lack of authority to make the initial stop and arrest means that Crawford acted outside his discretionary authority, thereby defeating Crawford's attempt to invoke the defense of qualified immunity.

Judge Tjoflat of the Eleventh Circuit has explained:

> To even be potentially eligible for summary judgment due to qualified immunity, the official must have been engaged in a "discretionary function" when he performed the acts of which the plaintiff complains. *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982) (holding that qualified immunity extends to "government officials performing discretionary functions"). It is the burden of the governmental official to make this showing. *Storck v. City of Coral Springs,* 354 F.3d 1307, 1314 (2003) ("Under qualified immunity analysis, *the public official* must first prove that he was acting within the scope of his discretionary authority when the allegedly unconstitutional acts took place." (emphasis added)). A defendant unable to meet this burden may not receive summary judgment on qualified immunity grounds. *Lumley v. City of Dade City,* 327 F.3d 1186, 1194 (11th Cir.2003) ("If the defendants were not acting within their discretionary authority, they are ineligible for the benefit of qualified immunity."); *see also Lee v. Ferraro,* 284 F.3d 1188, 1194 (11th Cir.2002). While a number of our cases omit this step of the analysis, *see, e.g., Denno v. Sch. Bd.,* 218 F.3d 1267 (11th Cir.2000); *Hall v. Talladega City Bd. of Educ.,* 115 F.3d 821 (11th Cir.1997), binding Supreme Court and Eleventh Circuit precedents require us to consider expressly this critical threshold matter.

7

Holloman ex rel. Holloman v. Harland, 370 F.3d 1252, 1263 -1264 (11th Cir. 2004). Once the Defendant satisfies the burden, then the burden shifts to the Plaintiff to show that Defendant is not entitled to qualified immunity under the standard two prong test.

Here the question is raised by Plaintiff but the evidence in the record is at-most ambiguous. The "Dougherty County Schools Campus Police Policies and Procedures Manual" attached to the deposition of Willie Griffin does not exclude the possibility that Crawford had arrest powers off campus. On the one-hand the policy manual only provides guidance for arrests "on school property," but on the other-hand requires that school police officers weapons' proficiency satisfy certain P.O.S.T. requirements. (Griffin Depo. Ex. 2, Manual, §§. V, XI.). Further, attached as an exhibit to Sheriff's Saba's deposition is a form signed by the Sheriff deputizing Crawford as a Dougherty County Sheriff's Deputy. (Saba Depo., Ex. 3). The form also identifies Crawford as performing the duties of campus police officer.

At the same time, both Saba, as Dougherty County Sheriff, and School Police Chief Griffin have given contradictory testimony about Crawford's authority to make arrests off campus. Saba clearly maintains that Crawford did not have the authority to make arrests off campus. (Saba Depo.). Griffin, while acknowledging the limited jurisdiction of the police campus police force, maintains that his officers can make arrests off-campus. (Griffin Depo., p. 16).

Though not discussed in detail by either party, the Eleventh Circuit has discussed the parameters of what in 1983 jurisprudence is called "discretionary function." Holloman, 379 F.3d at 1265-66. The Court explained that as the term of art has developed within the 1983 jurisprudence, it has changed over the years to essentially mean that the government employee was:

> (a) performing a legitimate job-related function (that is, pursuing a job-related goal), (b) through means that were within his power to utilize. *See \*1266 Hill v. Dekalb Reg'l Youth Det. Ctr.,* 40 F.3d 1176, 1185 n. 17 (11th Cir.1994) ("A government official acts within his or her discretionary authority if objective circumstances compel the conclusion that challenged actions

occurred in the performance of the official's duties *and* within
the scope of this authority." (emphasis added)).

Id. at 1265 -1266.

The court explained, for example, in the school context, the inquiry is not whether the official had authority to suspend a student for an improper reason. Instead, the inquiry is whether the school official's duties "included the administration of discipline." Id. The court continued:

> Similarly, in assessing whether a police officer may assert qualified immunity against a Fourth Amendment claim, we do not ask whether he has the right to engage in *unconstitutional* searches and seizures, but whether engaging in searches and seizures *in general* is a part of his job-related powers and responsibilities.

Id. This analysis is instructive in this case.

No matter the parameters of Crawford's actual authority, it cannot be said that Defendants have carried the burden of showing that Crawford had general arrest powers. When Defendant Griffin talked about a school police officer making an arrest off campus, he was talking about intervening in a crime being committed in the presence of the school officer. Even though he deputized Crawford, Sheriff Saba unequivocally stated that campus police officers did not have the authority to make a stop or arrest away from campus. Crawford's reliance on O.C.G.A. § 17-4-60[4] further negates the argument that Crawford had general arrest powers and was acting within his discretionary function. Georgia's citizen's arrest statute presupposes that the individual is not a state actor with arrest powers. The statute also requires that the actor actually witness the commission of a felony or that its commission be within his immediate knowledge.

---

[4]. O.C.G.A. § 17-4-60, commonly referred to as the statute providing for citizen's arrest, states as follows:
> A private person may arrest an offender if the offense is committed in his presence or within his immediate knowledge. If the offense is a felony and the offender is escaping or attempting to escape, a private person may arrest him upon reasonable and probable grounds of suspicion.

O.C.G.A. § 17-4-60.

9

In the present case, Crawford cannot be a private citizen acting under O.C.G.A. § 17-4-60 and invoke the defense of a government actor, *i.e.*, qualified immunity. Further, in this case, at the time of the stop, Defendant had not seen Plaintiff commit a felony. The Court finds that Defendant Crawford has failed to carry his burden of showing that he acted within his discretionary function. As such, Crawford is not able to avail himself to the defense of qualified immunity. Accordingly, Defendant Crawford's motion for summary judgment on Plaintiff's Fourth Amendment claims based on qualified immunity (Doc. No. 37) is **DENIED.**

This conclusion returns us to the analysis of Plaintiff's complaint against the remaining Defendants in their individual capacities, Oliver, Griffin and Heath, under the qualified immunity analysis. As argued by Defendants, all of Plaintiff's claims turn on whether the arrest violated the Fourth Amendment. As the initial stop and detention was without any official authority, and no felony occurred in the Defendant's presence as a matter of law, the arrest was without probable cause. Defendants did not address or make any other arguments for summary judgment on the qualified immunity issue other than to argue that Crawford's stop and detention and all subsequent acts are shielded by Crawford's entitlement to qualified immunity. As Crawford is not entitled to summary judgment on the qualified immunity issue, Defendants Oliver's, Griffith's and Heath's motions for summary judgment based on qualified immunity (Doc. Nos. 19, 37) are **DENIED**.

<u>Official Capacity</u>

Plaintiff also asserts federal claims against Defendants in their official capacities. Plaintiff alleges that Defendants, as policy makers, have promulgated customs, policies and procedures that caused the alleged illegal arrest and excessive use of force in violation of Plaintiff's Fourth Amendment rights. <u>Monnell v. Department of Social Services</u>, 436 U.S. 658 (1978). Defendants have moved for summary judgment on all federal claims in their official capacities. Plaintiff has failed to produce any admissible evidence that any policy, custom or practice was the cause or moving force of any constitutional violation.

Accordingly, Defendants' motions for summary judgment in their official capacities (Doc. Nos. 19, 37) are **GRANTED.**

State Law Claim

Plaintiff has asserted the state law claim of false arrest against Defendants Crawford and Heath. Defendants Crawford and Heath have moved for summary judgment on these claims. (Doc. Nos. 19, 37). They assert they are entitled to summary judgment on the merits of the claims and under the doctrines of official and sovereign immunity.

The Georgia tort of false arrest consists of the elements of: (1) an arrest under process of law; (2) without probable cause; (3) made maliciously; and (4) with the prosecution terminating in favor of the complaining party. O.C.G.A.§ 51-7-1. The only elements raised by Defendants Crawford and Heath involve whether probable cause existed to make the arrest and whether the arrest or actions of Defendants were with malice.

Further, Defendants raise the defense of official immunity. The doctrine of official immunity requires that the conduct be willful and malicious. State officers and municipal employees are entitled to official immunity from claims by citizens except when they perform ministerial duties negligently or when they act with actual malice in the performance of their official duties. Gilbert v. Richardson, 264 Ga. 744 (1994). Plaintiff does not allege that Defendants performed their ministerial duties negligently. Absent evidence of malice, willfulness, or corruption, a public officer is afforded immunity from liability to those who may be injured by the exercise of his discretion in the performance of his official duties. White v. Traino, 244 Ga. App. 208, 211 (2000). Actual malice means a deliberate intention to do wrong. Id. Another Georgia court defined the malice element of the tort of false arrest as involving "personal spite or in a general disregard of the right of consideration of mankind, directed by chance against the individual injured." Jenkins v. Blue Moon Cycle, Inc., 277 Ga. App. 733, 736 (2006). Further, under Georgia law, the lack of probable cause, allows an inference of malice. Id. As Crawford's initial stop and arrest was without authority and a

11

fact finder could find that his acts were malicious under Georgia law, Defendants' motions for summary judgment on the state law claim of false arrest (Doc. Nos. 19, 37) are **DENIED.**

    **SO ORDERED**, this  27th  day of September, 2007.

                                        /s/W. Louis Sands
                                        **W. LOUIS SANDS, JUDGE**
                                        **UNITED STATES DISTRICT COURT**